IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 23-cv-01339-RM-TPO

DERRICK GROVES,

    Plaintiff,

v.

CITY OF FORT COLLINS, and
JASON HAFERMAN,

    Defendants.

---

# ORDER

---

Four motions are pending in this lawsuit, including Defendant Haferman's Motion for Summary Judgment (ECF No. 100), which has been fully briefed (ECF Nos. 121, 144) and is dispositive of the entire case. The Motion is granted for the reasons below; the other motions are denied as moot.

**I.    LEGAL STANDARDS**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). However, "if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential

element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143-44 (10th Cir. 2013). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.   BACKGROUND

The following facts are undisputed unless stated otherwise. Plaintiff was on probation for driving under the influence ("DUI") when he was involved in a single-vehicle accident. (ECF No. 144-2, ¶¶ 2, 11.) His 2021 Tesla Model Y was totaled after going off the roadway, down a steep embankment, and through a fence. (*Id.* at ¶¶ 3, 7.) Defendant Haferman, a police officer for Defendant City of Fort Collins, responded to the scene. (*Id.* at ¶ 1.) Plaintiff told Defendant Haferman that the accident occurred after he glanced at his cell phone to see if he was receiving a call. (*Id.* at ¶ 4.) Defendant Haferman questioned Plaintiff repeatedly about drug and alcohol consumption, and Plaintiff repeatedly denied having had any drugs or alcohol. (*Id.* at ¶¶ 13, 25-29.) Plaintiff also told Defendant Haferman he was on probation for DUI. (*Id.* at ¶¶ 25, 27.)

The condition of Plaintiff's eyes during this interaction is an issue about which the parties disagree. Defendant Haferman asserts he observed that Plaintiff's eyes were glassy and that his pupils were different in size. (*Id.* at ¶ 12.) Plaintiff asserts that his eyes were not glassy, that his pupils were normal, and, more broadly, that Defendant Haferman "observed zero articulable

2

signs of drug or alcohol impairment." (ECF No. 121 at 1; ECF No. 144-2, ¶ 12.) Based on his observations, Defendant Haferman asked Plaintiff to participate in roadside sobriety tests.

Plaintiff initially consented but then refused to continue with the tests when asked to walk heel-to-toe. (ECF No. 144-2, ¶ 14.) He was arrested and charged with a DUI offense and careless driving. (*Id.* at ¶¶ 14, 15.) After his arrest, he consented to a blood draw.

Months later, Plaintiff's blood test for alcohol and drugs came back negative. (*Id.* at ¶ 17.) After he completed a responsive driving class, the charges against him were dismissed. (*Id.* at ¶ 16.) His ongoing probation revocation proceedings, prompted by the DUI charge, were also dismissed. (*Id.* at ¶¶ 58, 60.)

In his Amended Complaint, Plaintiff brings a claim under 42 U.S.C. § 1983 against both remaining Defendants for unlawful arrest as well as a § 1983 claim for malicious prosecution and related state claims against Defendant Haferman.[1] Defendant City of Fort Collins has filed a Motion to Dismiss (ECF No. 42), a Motion to Strike (ECF No. 86), and a Motion for Summary Judgment (ECF No. 102). Defendant Haferman filed his own Motion for Summary Judgment.

## III.   ANALYSIS

In his Motion, Defendant Haferman argues that all Plaintiff's claims fail because he had probable cause to arrest Plaintiff. The Court agrees that Defendant Haferman is entitled to summary judgment on Plaintiff's federal claims.

The Court assesses the legality of Plaintiff's encounter with Defendant Haferman in two phases. In the first phase, the Court considers the permissibility of Defendant Haferman's actions under principles pertaining to investigatory detentions in general and traffic stops in

---

[1] He has dismissed his supervisory claims against two other police officers. (ECF No. 54.)

3

particular. *See United States v. Edgerton*, 439 F.3d 1043, 1047 (10th Cir. 2006) ("The detention of a driver, however, brief, during the course of a routine traffic stop constitutes a seizure within the meaning of the Fourth Amendment."). Where, as here, there is no dispute that "the officer's action was justified at its inception," the relevant inquiry is whether the officer's subsequent conduct "was reasonably related in scope to the circumstances that justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *see Amundsen v. Jones*, 533 F.3d 1192, 1198 (10th Cir. 2008). "If the officer's conduct during the stop is reasonably related to the circumstances justifying that stop, the officer may continue that conduct until the purpose of the stop is satisfied and any underlying reasonable suspicion is dispelled." *Amundson*, 533 F.3d at 1199 (quotation omitted). "[O]nce the purpose of the stop is satisfied and any underlying reasonable suspicion is dispelled, the driver's detention generally must end without undue delay." *Edgerton*, 439 F.3d at 1047.

In the second phase, the Court considers whether Defendant Haferman had probable cause to arrest Plaintiff. "A warrantless arrest violates the Fourth Amendment unless it was supported by probable cause." *Cronick v. Pryor*, 99 F.4th 1262, 1268 (10th Cir. 2024) (quotation omitted). "An officer has probable cause to arrest a person when the facts and circumstances surrounding the situation would lead a reasonably prudent officer to believe that the arrestee has committed a crime." *Id.* (quotation omitted). "Whether probable cause exists is determined by looking at the totality of the circumstances, based on what an objective officer would have known in the situation." *Id.* (quotation omitted).

Here, Plaintiff concedes that Defendant Haferman's investigation into the cause of the accident was justified at its inception but argues that Defendant Haferman lacked the reasonable suspicion required to justify continuing the investigation—by asking him to participate in

4

roadside sobriety tests—because he displayed no indicia of drug or alcohol impairment. (ECF No. 121 at 3.) This argument lacks merit for several reasons.

First, Plaintiff fails to demonstrate the existence of a genuine issue as to whether Defendant Haferman observed him having glassy eyes and different-sized pupils.[2] Plaintiff argues that his eyes appear normal in the footage from Haferman's body-worn camera ("BWC"). (ECF No. 144-2, ¶ 12.) But Plaintiff's face and eyes do not appear initially in the footage, do not appear at all while Defendant Haferman examines his eyes by shining a light into them, and first appear after the roadside tests are underway and Plaintiff is tracking Defendant Haferman's fingers with his eyes. (*See* ECF No. 105.) Notably, immediately after examining Plaintiff's eyes with a flashlight (not captured by video), Defendant Haferman asks medical personnel whether they have examined Plaintiff and tells Plaintiff that his pupils are different sizes. (*Id.*) Moreover, even once Plaintiff's face and eyes are present on the video, there is no other person in the camera frame that could serve as an apt comparator.[3] Also, the BWC footage does not comprise everything Defendant Haferman could have observed firsthand; after all, the scene is at night, there are numerous flashing lights, the view from the camera is intermittently obstructed by what appears to be a vest worn by Defendant Haferman, and the viewpoint from the BWC is not the same as Defendant Haferman's eye-level viewpoint during the interaction. Thus, the Court finds the BWC footage is insufficient to create a genuine issue of material fact regarding whether Plaintiff's eyes appeared normal.

---

[2] Plaintiff presents no argument or evidence that these conditions are not properly considered to be indications of possible impairment.

[3] The closest, yet inadequate, comparator is Plaintiff's girlfriend, who speaks with Defendant Haferman from inside her car while Plaintiff is standing outside and to the right of Defendant Haferman.

Second, Plaintiff attempts to refute Defendant Haferman's contention that he observed Plaintiff's pupils were different sizes by citing a report by Defendant Haferman's expert witness, Chris Treadway.[4]  After viewing the BWC footage, Mr. Treadway opined: "Based on what I can see on the body worn camera [Plaintiff's] pupils appear to be 'normal' pupil size, from my training and experience."  (ECF No. 122-3 at 6.)  However, as noted, the BCW footage does not capture Plaintiff's eyes when Defendant Haferman used his flashlight and made his determination.  Further, Mr. Treadway's report does not disprove what Defendant Haferman observed firsthand at the scene or negate the possibility that Plaintiff's pupils could have changed once the flashlight was removed from his face.  Therefore, even if Mr. Treadway is deemed to have expertise in assessing eye conditions by viewing video in less-than-optimal conditions, his opinion as to what the BWC footage shows is not enough to create a genuine issue about Defendant Haferman's observations of Plaintiff's pupils.

Third, Plaintiff attempts to refute Defendant Haferman's contention that he observed signs of impairment by citing the report of another officer who was at the scene, Peter Nolan.  (*See* ECF No. 101-1.)  But Officer Nolan's failure to mention whether he observed any indications of impairment does not create a genuine issue as to what Defendant Haferman observed.

Fourth, Plaintiff notes that neither the officers nor anyone else present at the scene noticed the odor of alcohol on him.  (*See* ECF No. 144-2, ¶ 24.)  But that does not preclude the possibility that he still could have consumed alcohol or been impaired by drugs.

---

[4] To the extent Mr. Treadway's observations of the BWC footage could create a dispute, it should be noted that he opined Plaintiff's eyes appeared to be glassy.  (ECF No. 122-3 at 6.)

6

Fifth, Plaintiff seems to contend that Defendant Haferman should have believed Plaintiff's repeated declarations of sobriety. But Plaintiff cites no authority, nor is the Court aware of any, for the patently impractical proposition that an officer's reasonable suspicion of impaired driving may be dispelled based on the driver's say-so. Nor does he cite any authority for the proposition that an officer must end an investigation into the cause of a single-vehicle accident after simply confirming that the driver's driving privilege was valid.

In short, contrary to Plaintiff's suggestion, it was not the accident alone that supported Defendant Haferman's reasonable suspicion that Plaintiff could have been impaired. (*See* ECF No. 121 at 4-5.) In addition, Plaintiff has not identified circumstances that should have dispelled Defendant Haferman's reasonable suspicion that Plaintiff may have been impaired. Thus, the Court finds it was not improper for Defendant Haferman to extend the scope of his investigation into the cause of the accident by investigating whether Plaintiff was driving under the influence and asking him to participate in roadside tests. "A field sobriety test is a minor intrusion on a driver only requiring a reasonable suspicion of intoxication and an easy opportunity to end a detention before it matures into an arrest." *Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007) (quotation omitted).

As described above, there is no dispute that Plaintiff began the roadside tests but then refused to continue. Plaintiff contends that Defendant Haferman administered the eye-tracking test incorrectly, which Defendant Haferman concedes.[5] Plaintiff further contends that he refused to continue with the roadside tests because he was cold and uncomfortable when Defendant Haferman ordered him to remove the blanket he was using for warmth and continued to question

---

[5] Consequently, Defendant Haferman does not rely on the eye test to support his Motion. (ECF No. 100 at 8 n.2.)

7

him about his use of marijuana for medical reasons. (ECF No. 121 at 5.) Despite these explanations, the Court finds that a reasonable officer in Defendant Haferman's position could view Plaintiff's refusal to continue with the tests as indicative of an intent to conceal evidence of guilt. *See Wilder*, 490 F.3d at 815 (noting that a contrary conclusion would allow a driver to escape arrest by refusing to cooperate). As a result, the Court finds that probable cause to arrest Plaintiff for DUI developed when he refused to continue with the roadside tests. *See id.*

Further, there is no evidence that Defendant Haferman lacked probable cause to arrest Plaintiff for careless driving as well. "The constitutionality of an arrest does not depend on the arresting officer's state of mind. . . . All that matters is whether he possessed evidence that would provide probable cause to arrest [him] on *some* ground." *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006). Plaintiff admitted to Defendant Haferman that he glanced at his phone just before the accident, and there is no evidence that road or weather conditions played a role in the accident. To the extent Plaintiff now argues that the car's autosteer program or some other mechanical problem was to blame, there is no evidence that he informed Defendant Haferman of such possibility. Therefore, Plaintiff also has not shown that Defendant lacked probable cause to believe Plaintiff was guilty of careless driving based on the facts and circumstances surrounding the accident that were known to Defendant Haferman at the time.

Because Plaintiff has failed to establish a genuine issue to support his federal claim for unlawful arrest, his related municipal liability claim against Defendant City of Fort Collins necessarily fails as well. A municipality cannot be held liable when there is no underlying constitutional violation by one of its officers. *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009); *see also Schneider v. City of Grand Junction Police Dep't*, 71 F.3d 760, 770 (10th Cir.

2013) (noting that a plaintiff bringing a municipal liability claim must demonstrate a direct causal link between some municipal action and the deprivation of his rights).

Having concluded that Plaintiff's federal claims cannot survive summary judgment, the Court declines to exercise supplemental jurisdiction over his state law claims. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). Therefore, those claims are dismissed without prejudice.

Finally, because the Court did not rely on Plaintiff's expert report targeted in the pending Motion to Strike (ECF No. 86), that Motion has become moot.

### IV.  CONCLUSION

Therefore, Defendant Haferman's Motion (ECF No. 100) is GRANTED. Plaintiff's federal claims are DISMISSED WITH PREJUDICE, and his state claims are DISMISSED WITHOUT PREJUDICE. The other pending Motions (ECF Nos. 42, 86, 102) are DENIED AS MOOT, and the Clerk is directed to CLOSE this case.

DATED this 10th day of September, 2025.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge